UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HUI FANG,

                Plaintiff,

      -against-

TAMIKA GRAY, [1] *in his official capacity as New York District Office Director, U.S. Citizenship & Immigration Services*,

                Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-06886 (OEM)

ORELIA E. MERCHANT, United States District Judge:

On September 15, 2023, Plaintiff Hui Fang ("Plaintiff" or "Fang") commenced this action seeking relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701. Specifically, Plaintiff seeks an order directing the USCIS New York District Office Director ("Defendant") to adjudicate Plaintiff's I-1589 petition for asylum and withholding of removal. Complaint ("Compl."), ECF 1, at 4. Before the Court is Defendant's fully briefed motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or, alternatively, to dismiss Plaintiff's mandamus and APA claims under Rule 12(b)(6) for failure to state claims on which relief can be granted. *See* Memorandum of Law in Support of Motion to Dismiss ("Def's MOL"), ECF 15-1; Plaintiff's Response in Opposition ("Pl's Opp."), ECF 16[2]; Defendant's Reply ("Def's Reply"), ECF 17. For the following reasons, Defendant's motion is granted.

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Thomas Cioppa, the former New York District Office Director of U.S. Citizenship & Immigration Service ("USCIS"), is substituted with Tamika Gray, who is the current USCIS New York District Office Director. The Clerk of Court is directed to amend the caption to reflect this public officer substitution.

[2]     The docket shows that Plaintiff filed his response in opposition twice, at ECF 14 and ECF 16. The filings are identical. The Court will therefore refer to Plaintiff's filing at ECF 16.

1

## BACKGROUND

Plaintiff is a native and citizen of the People's Republic of China ("China") and has been living in the United States since October 2019. Compl. ¶ 6. Plaintiff currently resides in the State of New York. *Id.*; *see* Declaration of John Elliott, the Supervisory Chief of Staff of the New York Asylum Office of USCIS ("Elliot Decl."), ECF 15-2, ¶ 11. Plaintiff entered the United States through the United States-Mexico border. Elliot Decl. ¶ 11.

Plaintiff filed a completed I-1589 petition for asylum and withholding of removal on September 13, 2021.[3] Compl., Ex. A. The USCIS regulations provide that applicants for asylum who are not convicted of aggravated felonies are eligible to request an employment authorization document ("EAD"). 8 C.F.R. § 208.7(a)(1). USCIS records indicate that Plaintiff previously obtained an EAD that expired on April 28, 2024, but that Plaintiff's EAD is valid through October 2025 under USCIS' automatic extension regulation. Elliot Decl. ¶ 13 (citing 8 C.F.R. § 274a.13(d)(5)). Plaintiff filed an EAD renewal application, which remains pending. *Id*.

To date, Plaintiff has not been scheduled for an interview on his I-1589 petition. Compl. ¶ 9. Because USCIS has not adjudicated Plaintiff's I-1589 petition, he filed the instant action on September 15, 2023. *Id.* Plaintiff asserts two claims in this action: (1) a mandamus claim alleging that Defendant "has breached his duty to act on [Plaintiff's] application" under 28 U.S.C. § 1361, *id.* ¶ 16; and (2) a claim alleging that Defendant "has failed to correctly process and adjudicate" his petition "without a known reason" "for an unreasonable period of time" in violation of the APA, 5 U.S.C. § 706(1), *id.* ¶ 15. Plaintiff alleges that "delays and failures by [Defendant] to

---

[3] While Plaintiff alleges that he "filed for asylum in the United States . . .[o]n October 6, 2021," Compl. ¶ 8, he attaches a receipt from USCIS showing his completed I-1589 form was received on September 13, 2021, *see* Compl., Ex. A.

2

adjudicate [his] application are unreasonable, extraordinary, and have no conceivable limit." *Id.* ¶ 9.

## LEGAL STANDARDS

When faced with a motion to dismiss under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a court must consider the Rule 12(b)(1) motion first because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Chambers v. Wright*, 05-CV-9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quotation omitted); *see Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453 (1900) (holding that "the first and fundamental question is that of jurisdiction" and that "the court is bound to ask and answer [this question] for itself, even when not otherwise suggested, and without respect to" the parties' perspectives). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

### A. Rule 12(b)(1) Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (EJ), 2022 WL 974384, at * 2 (S.D.N.Y. Mar.

3

30, 2022). Further, a district judge "may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues." *Id.*

A motion to dismiss on jurisdictional grounds "may be either 'facial,' i.e., based solely on the allegations of the complaint and exhibits attached to it, 'or fact-based,' i.e., based on evidence beyond the pleadings." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (citation omitted). A facial or factual attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the court to accept all factual allegations in the complaint as true. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto."). A factual attack places the "jurisdictional facts [ ] in dispute[,]" *Harty*, 28 F.4th at 441, by "proffering evidence beyond the [p]leading[s][.]" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, at 158 (E.D.N.Y. 2022). In resolving factual attacks on jurisdiction, the court "has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

B.     **Rule 12(b)(6) Standard**

Once a court has determined the threshold issue of subject matter jurisdiction and assured itself of its jurisdiction over a plaintiff's claims, it may turn to the question of whether the plaintiff has stated a claim under which relief can be granted. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  Similar to the standard applicable to a Rule 12(b)(1) motion, "[i]n addressing the sufficiency of a complaint [under Rule 12(b)(6)], [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) (citing *Twombly*, 550 U.S. at 555,557), superseded by statute as stated in *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 483 (2023).  When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006).  As such, courts typically "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (citing *Glob. Network Commc'ns, Inc.*, 458 F.3d at 154–55).

Under Rule 8, a plaintiff need only provide a short, plain statement of their claim against the defendants, so the defendants have adequate notice of the claims against them.  *See* Fed. R. Civ. P. 8.  To satisfy this standard, the complaint must, at a minimum "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is

complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (citation omitted).

## DISCUSSION

### A. Plaintiff's APA Claim

The APA permits federal courts to compel agency action that has been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), unless another statute precludes judicial review. 5 U.S.C. § 701(a)(1). To assess whether Plaintiff has stated a claim under the APA, the Court considers the so called "*TRAC*" factors outlined in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), which the Second Circuit recognizes "set[s] forth [a] test for determining if agency action is unreasonably delayed." *Nat. Res. Def. Counc., Inc. v. FDA*, 710 F.3d 71, 84 (2d Cir. 2013). Courts within the Second Circuit apply the *TRAC* factors to assess whether a defendant has taken too long to decide an asylum application. *See De Oliveira v. Barr*, 19-CV-1508 (ENV), 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020); *Mu v. U.S. Citizenship & Immigr. Servs.*, 23-CV-02067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023) (applying the *TRAC* factors to an asylum claim under the APA); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 51 (S.D.N.Y. 2020) ("*Xu*") (same). The *TRAC* factors are:

> (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) where Congress has provided a timetable, it may supply content for this rule of reason; (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Xu*, 434 F. Supp. 3d at 51 (citations omitted). A plaintiff need not "demonstrat[e] that all of these factors weigh in [their] favor" to prevail on an undue delay claim under the APA. *Mu*, 2023 WL 4687077, at *4. Rather, the factors are "intended to provide 'useful guidance in assessing claims

of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80). For example, "a court may refuse[] to grant relief, even though all the [*TRAC*] factors…favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Zhang v. Wolf*, 19-CV-5370 (DLI), 2020 WL 5878255, at *6 (E.D.N.Y. Sept. 30, 2020) (alternations in original) (citation omitted) (declining to compel decision on asylum application).

Defendant argues that the first, third, fourth, and fifth TRAC factors warrant dismissal of this action. Def's MOL at 18-23. The Court addresses these factors in turn.

### 1. The First *TRAC* Factor

With respect to the first TRAC factor, whether "the time agencies take to make decisions [is] governed by a 'rule of reason,'" *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80, Defendant argues that a last-in-first out ("LIFO") scheduling system has been found to constitute a rule of reason by other courts in the context of asylum applications. Def's MOL (citing *Konde v. Raufer*, 23-CV-4265, 2024 WL 2221227, at *3 (S.D.N.Y. May 16, 2024); then citing *Zheng v. Garland*, 22-CV-6039, 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024); *Liu v. Wolf*, 19-CV-410 (PGG), 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020); and then citing *Xu*, 434 F. Supp. 3d at 53, 55, 60). Defendant further asserts that in March 2024, the "USCIS adjusted its scheduling priority by adding to the LIFO scheduling system . . . a second, simultaneous scheduling track, which schedules interviews on 'applications pending in the backlog, starting with the oldest applications and working forward'"—a first-in-first out ("FIFO") scheduling system. Elliot Decl. ¶ 8 (citation omitted). Defendant argues that courts have found that this parallel track FIFO scheduling system consistent with a rule of reason in other immigration contexts and that the combination of the LIFO

7

and FIFO systems was held to constitute a rule of reason by the District of Maryland.  Def's MOL (citing *Tawah v. Mayorkas*, 23-CV-2970, 2024 WL 2155060, at *3 (D. Md. May 14, 2024)).

This Court joins other courts in this Circuit by holding that Defendant's adjudication of asylum applications on a LIFO scheduling system, in order to deter fraud and abuse by disposing of "unmeritorious or frivolous applications," is an appropriate rule of reason.  *Mu*, 2023 WL 4687077, at *4 (collecting cases).  Plaintiff does not allege any other cause for the delayed decision, and the Court will not conjure up one.  While the Court is sensitive to the fact that Plaintiff has had to wait more than two years for an adjudication of his application, and thus has not seen his family during this period, courts have declined to compel asylum application adjudications that have been pending much longer than two years or to find an APA violation.  *See Liu*, 2020 WL 2836426, at *1 (declining to compel decisions on asylum applications that had been pending for more than four-and-a-half years and dismissing complaint); *Xu*, 434 F. Supp. 3d at 48 (declining to compel decision on asylum application that had been pending for four years and dismissing complaint).

### 2.   The Fourth *TRAC* Factor

With respect to the fourth TRAC factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80, Defendant argues that granting Plaintiff the relief he seeks and ordering immediate adjudication of Plaintiff's application "would indefensibly favor Plaintiff over others with I-1589s pending without any reason other than the fact that he filed suit [where] Plaintiff fails to allege any reason that the other applicants within the backlog are less worthy of swift adjudication."  Def's MOL at 20.  Plaintiff does not address this argument.

Plaintiff cannot explain how "leap-frogging him to the front of the adjudication queue would be beneficial to USCIS." *Chen v. Mayorkas*, 736 F. Supp. 3d 151, 161 (E.D.N.Y. 2024); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) (declining to compel adjudication of asylum application because "the only difference between" plaintiff and other applicants was "that plaintiff has brought a federal lawsuit"); *Yang v. Houghton*, 21-CV-5485 (BMC), 2021 WL 5879033, at *1 (E.D.N.Y. Dec. 13, 2021) (declining to compel adjudication of asylum application because "it just wouldn't be fair to applicants who have been waiting longer than a plaintiff just because the plaintiff has chosen to sue"). "[W]here a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain," courts may "refuse[ ] to grant relief," even if all of the other TRAC factors militate in favor of relief. *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015) (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Indeed, courts in this district have dismissed undue delay claims where the sought-after relief would "simply jump[ ] one plaintiff to the front of the line and push[ ] everyone else further back." *Yang*, 2021 WL 5879033, at *1; *accord, De Oliveira*, 2020 WL 1941231, at *5; *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224–25 (E.D.N.Y. 2021). Thus, the fourth TRAC factor favors dismissal of Plaintiff's APA claim.

### 3.     The Third and Fifth *TRAC* Factors

With respect to the third and fifth *TRAC* factors, concerning the impact of the alleged unreasonable delay on human health, welfare, and other interests, *see Zhang*, 2020 WL 5878255 at *5, Defendant argues that there is a "lack of allegations by Plaintiff in the complaint regarding any health or welfare interests prejudiced by the delay . . . apart from the passage of time." Def's MOL at 22. Plaintiff does not dispute this but rather presumptuously argues in response that

"Defendant should be aware that the asylum application in question clearly shows that [Plaintff] is married and has a wife and two children (aged 12 and 9) in China." Pl's Opp. at 2. Further, Plaintiff argues that he "has not seen [his family] since he left China in October 2019" and therefore this constitutes "hardship and heart ache for [his] entire family" and any further delay "pushes the potential re-unification of [his] family . . . ." *Id.*

As Defendant points out, these newly-alleged facts are not properly before the Court for consideration. Def's Reply. Plaintiff's attempt to cure the deficiencies in his complaint at this juncture is unavailing. Plaintiff has been represented by counsel since the commencement of this action and therefore he is not entitled to the liberal construction of the complaint afforded to pro se litigants. *See Ngai v. Mayorkas*, 22-CV-5358, 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024); *see Poz v. Mayorkas*, 23-CV-7902, 2024 WL 4309234, at *4 (E.D.N.Y. Sept. 26, 2024) (declining to consider "factual evidence [that] was not [alleged in the complaint] or incorporated in it by reference[.]"). Even if these facts were properly before the Court, they would be insufficient to sway the third and fifth TRAC factors weigh in Plaintiff's favor because they do not allege that human *health* and *welfare* are at stake. *See Xu*, 434 F. Supp. 3d at 54 n.5 (finding that third and fifth factors do not weigh in favor of Plaintiff where the complaint "d[id] not include any allegations that [Plaintiff] is suffering from psychiatric disorders as a result of the delay, or that she has any family members in China whose lives may depend on her obtaining asylum in a timely manner"). The Court is unable to evaluate Plaintiff's general statement of "hardship and heartache" without more information or factual basis. *See Ruan v. Wolf*, 19-CV-4063 (ARR) (RER), 2020 WL 639127, at *6 (E.D.N.Y. Feb. 11, 2020) (complaint was devoid of facts and sufficient information that would allow the Court to make determination as to these two factors).

Further, the USCIS has procedures in in place that allows asylum seekers to request expedited adjudication for "emergencies and urgent humanitarian situations" or to seek "urgent request to be scheduled for an interview outside of the priority order . . . ." *See* USCIS, Expedite Requests: How to Make an Expedite Request, https://www.uscis.gov/forms/forms-information/how-make-expedite-request (last updated Oct. 11, 2024); *see* USCIS, Affirmative Asylum Interview Scheduling, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last updated Mar. 29, 2024). Plaintiff states in conclusory fashion that he "has exhausted all administrative remedies available to him." Compl. ¶ 10. However, that is insufficient for this Court to determine whether Plaintiff has availed himself of these expedition procedures.

### B. Plaintiff's Mandamus Claim

The Court now turns to Plaintiff's mandamus claim. Section 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *see De Oliveira*, 2020 WL 1941231, at *2 ("The Mandamus Act empowers district courts to exercise 'original jurisdiction to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'") (quoting 28 U.S.C. § 1361). To be granted mandamus relief, the plaintiff must establish "(1) a clear right . . . to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) [that] no other adequate remedy [is] available." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989); *Benzman v. Whitman*, 523 F.3d 119, 132-33 (2d Cir. 2008). However, mandamus is a "drastic and extraordinary remedy" that is "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted). Defendant

11

argues that Plaintiff's mandamus claim should be dismissed because Plaintiff cannot satisfy the first and third requirements.

United States Code § 1158 governs the asylum process in the United States, providing that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(ii). Once that interview has taken place, the statute provides that, "in the absence of exceptional circumstances, final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5)(A)(iii). Relevant here, that same subsection of the statute contains a provision stating that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). In other words, there is no private right of action to enforce the timing provision. *See Baisheng Chen v. Wolf*, 19-CV-9951 (AJN), 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020). Therefore, Plaintiff has not shown a clear right to the relief he seeks from this Court. *See id.*

Plaintiff does not address the issue of whether this Court has subject-matter jurisdiction to hear this case. Nonetheless, the Court follows other courts in this Circuit that find that 8 U.S.C. § 1158(d)(7) does not strip jurisdiction, but instead "preclude[s] asylum applicants from bringing lawsuits to enforce the specific 45-day deadline for receiving an interview and the 180-day deadline for receiving a decision." *Mu*, 2023 WL 4687077, at *3 (collecting cases); *see also Ngai*, 2024 WL 1346530, at *2; *Baisheng Chen*, 2020 WL 6825681, at *3 (dismissing a mandamus claim in case challenging delay of I-589 adjudication—"where, as here, the statute itself specifically provides that the timing provisions do not 'create any substantive or procedural right or benefit,'"

the plaintiff "cannot make a showing that he has a right—let alone a clear right—to the requested relief"). Plaintiff's allegation that he has not been scheduled for an interview on his I-1589 application would not confer on him a right to the relief he seeks.

Further, as stated above, *see* Discussion Section A, Plaintiff has other adequate remedies available, such as his asserting a claim under the APA, which he has done in the instant action. *See* Compl.; *see also Mu*, 2023 WL 4687077, at *3 ("The Court need not even consider whether Plaintiff has satisfied the first two requirements because the availability of a cause of action under 5 U.S.C. § 706(1), authorizing a court to 'compel agency action unlawfully withheld or unreasonably delayed,' means that Plaintiff has an adequate alternative remedy under the APA.") (citing *Liu*, 2020 WL 2836426, at *10).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's complaint is dismissed without prejudice to refile if there is a continued delay and Plaintiff is able to state additional facts or causes of action.

SO ORDERED.

/s/
ORELIA E. MERCHANT
United States District Judge

January 23, 2025
Brooklyn, New York

13